UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PANERA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19CV276 HEA |
| | ) |
| JAMES DOBSON, et al., | ) |
| | ) |
| Defendants. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order [Doc. No. 2] and Defendants' Motion to Dismiss [Doc. No. 17]. A hearing on both motions was held on February 27, 2019.

## **Facts and Background**

Plaintiff Panera, LLC ("Panera") is a fast casual dining company with over 2,300 branded bakery-cafes throughout the United States and Canada. Defendants James Dobson, Krish Gopalakrishnan, and James Phillips (collectively, "Employees" or "Individual Defendants") were employees of Panera who each served in a Directorial position in Panera's Information Technology ("IT") department as of January, 2019. Defendant Act III ("Act III") owns and manages several fast causal brands.

The Individual Defendants each executed non-compete agreements with Panera, both upon their hiring or promotion to the Director level, and, most recently, on November 13, 2017. The November 13, 2017 re-execution was accompanied by a stock grant to each Individual Defendant. The parties to the non-competes are Panera and each respective Individual Defendant. The non-competes contain a six-month prohibition on employment with a competitor of Panera, as well as a forum selection clause that proscribes litigation take place in Missouri.

Ron Shaich ("Shaich") is the former President, CEO, and Chairman of the Board of Directors of Panera. Shaich is now the controlling member and manager of Act III. Shaich avers that Panera knew of his involvement in Act III, as he began forming Act III while still the Chairman of Panera's Board, and therefore "each and every one of [his] investments was vetted and approved by the board." (Shaich Aff. ¶ 25).

Nevertheless, relations between Panera and Act III soured in 2018 when the president of one of Act III's restaurant holdings went to work for Panera. Act III threatened to enforce the president's non-compete agreement; Panera claimed the agreement was invalid. On December 6, 2018, Act III and Panera entered into a settlement agreement (the "Settlement"). Pertinent here are the following subsections of the Settlement:

6. <u>Employee Matters</u>
   a. . . . Act III [or an Act III Entity] . . . may
      i. solicit past, current and future employees of Panera for employment with an Act III Entity;
      ii. make an offer of employment to past, current and future employees of Panera; provided, however, that the Act III Entity must first provide written notice of the offer of employment . . . to Panera at least two weeks before any commencement of employment by a Panera employee (the "Notice Period"); . . . and
   b. During the Notice Period, Panera may:
      i. negotiate terms for the employee to remain employed by Panera, or
      ii. decide that it will waive the terms of any applicable non-competition agreement that it has with the employee with respect to such employee's employment with an Act III entity.

Panera shall consider in good faith whether it is reasonably necessary to restrict any such employee from accepting an offer of employment from an Act III Entity under an applicable non-competition agreement in order to protect a legitimate Panera business interest recognized under applicable law, such as the protection of its confidential and proprietary information . . . . Prior to the conclusion of the Notice Period, Panera shall notify the Act III Entity of any such decision in writing.

Notwithstanding the foregoing, nothing contained herein shall waive, abridge, or extinguish any rights and remedies that the Act III Entities or such employee may have at law or in equity regarding the applicability or enforceability of such non-competition agreement . . . .

The Settlement also included a forum selection clause stating that "the exclusive jurisdiction and venue for any actions arising out of this Settlement Agreement shall be in any state or federal court in Delaware."

On February 5, 2019, the Individual Defendants submitted their resignations to Panera. The Individual Defendants informed Panera that they had been solicited and offered employment with Act III. On February 8, 2019, Shaich sent formal notice of the offers of employment and requested that Panera waive the non-competes. Panera terminated the Individual Defendants' employment on February 8. On February 13, Shaich called the CEO of Panera's parent company, who informed Shaich that Panera intended to litigate the non-competes. Act III did not receive written notice of Panera's decisions regarding the Individual Defendants' non-compete agreements.

On February 21, 2019, Act III filed suit in Delaware Court of Chancery alleging that Panera breached the Settlement by "insisting on enforcing the Employees' non-competes even though it is not reasonably necessary for Panera to do so; and (b) failing to assess in good faith the request that it waive the non-competes."

Later in the day on February 21, Panera filed the instant action seeking a Temporary Restraining Order to enjoin the Individual Defendants from beginning work at Act III on March 1. Among other things, Panera claims it will suffer irreparable harm from the loss of trade secrets should the Individual Defendants breach their non-compete agreements by going to work at Act III tomorrow ( March

1, 2019).

## Discussion

The proper way to enforce a forum selection clause pointing to a state forum is through the doctrine of *forum non conveniens*. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Courts evaluate forum selection clauses pointing to either state or federal fora under the framework set forth in 28 U.S.C. § 1404(a). *Id.* at 61. "Because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 63 (quotation omitted).

The question central to this action, therefore, is: Which forum selection clause is valid and, more importantly, controlling? Plaintiffs argue that because the non-competes are between only the Individual Defendants and Panera, Panera has the right to enforce those forum selection clauses against Individual Defendants notwithstanding the Settlement or the Delaware suit brought by Act III. Defendants argue that the Settlement has modified or superseded the non-competes, such that the non-competes are no longer enforceable on their own terms. For the purpose of this action, Defendants are correct.

Panera continually asserts that its non-compete agreements with the

Individual Defendants are not affected by the Settlement because Act III is not a party to the non-competes. In fact, Panera entered into a contract with Act III, a third party, expressly conditioning the very non-compete agreements that it now claims are so exclusive. By executing the Settlement, Panera assented to any action involving the enforcement of a Panera non-compete against an employee who goes to work for Act III having Delaware as its exclusive forum. In the unlikely event that Panera could show that a non-compete action against an Act III defector did not arise out of the Settlement, then the action could probably be brought in Missouri courts. However, Panera agreed to condition its enforcement of non-compete agreements against employees who go to work for Act III on the fulfillment of certain obligations by Panera and Act III. If a breach of those obligations is at issue, then the action arises out of the Settlement.

Panera's claims against the Individual Defendants necessarily arise out of Panera's alleged failures to consider in good faith whether enforcement of the non-compete is necessary, and to notify Act III of its decision in writing. Because the valid forum-selection clause in the Settlement controls, the Court finds the proper forum for this action to be Delaware.

## Conclusion

Based upon the foregoing analysis, Defendants' Motion to Dismiss [Doc. No.

17] is well taken and will be granted.   This matter is dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED**.

Dated this 28th day of February, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE